1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6   ELIZABETH HEARN,

7                              Plaintiff,          Case No. C09-5544KLS

8          v.                                      ORDER REVERSING AND
                                                   REMANDING THE COMISSIONER'S
9   MICHAEL J. ASTRUE, Commissioner of             DECISION TO DENY BENEFITS
    Social Security,
10
                             Defendant.
11

12

13

14         Plaintiff has brought this matter for judicial review of the decision of the Commissioner

15  of Social Security (the "Commissioner") to deny her application for supplemental security

16  income ("SSI") benefits.  Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and

17  Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned

18  Magistrate Judge.  After reviewing the parties' briefs and the remaining record, the Court hereby

19  finds and orders that for the reasons set forth below, the Commissioner's decision in this case

20  should be reversed, and this matter should be remanded for further administrative proceedings to

21  be conducted in accordance with the findings contained herein.

22

23                         FACTUAL AND PROCEDURAL HISTORY

24         Plaintiff currently is 48 years old. Tr. 65.  She has a high school education, one year of

25  college course work, and past relevant work as a customer service representative and kitchen

26  helper. Tr. 22, 48.  On May 28, 2003, plaintiff filed an application for SSI benefits, alleging

ORDER - 1

disability as of September 1, 2001, due to fibromyalgia, osteoarthritis, restless leg syndrome, sleep apnea, and post traumatic stress disorder ("PTSD"). Tr. 48.  Her application was denied initially and on reconsideration. Id.

A hearing was held before an administrative law judge ("ALJ") on March 22, 2005, at which plaintiff, represented by a non-attorney, appeared and testified, as did a medical expert and a vocational expert. Id.  On October 25, 2005, the ALJ issued a decision in which he determined plaintiff to be not disabled, finding specifically in relevant part that she was capable of performing other jobs existing in significant numbers in the national economy. Tr. 48-59. Plaintiff did not appeal this adverse decision. Tr. 10.

Plaintiff filed a second application for SSI benefits on April 20, 2006, alleging disability also as of September 1, 2001, due to fibromyalgia, arthritis, diabetes, PTSD, depression, anxiety, and sleep apnea. Tr. 10, 116, 132, 173.  Plaintiff's second application was denied initially and on reconsideration. Tr. 10, 65-66, 68, 73.  Another hearing was held before a different ALJ on March 23, 2009, at which plaintiff, represented by counsel, appeared and testified, and at which a vocational expert appeared but did not testify. Tr. 25-44.

On May 18, 2009, the second ALJ issued a decision, finding that because plaintiff did not appeal the prior decision, that decision was "administratively final," and that because plaintiff's "physical and mental impairments [had] not materially changed or worsened since" that decision, "the presumption of continuing non-disability [resulting from the *res judicata* effect thereof had] not been rebutted." Tr. 10.  The ALJ further determined that plaintiff was not disabled in regard to her second application, finding specifically in relevant part:

(1)    at step one of the sequential disability evaluation process,[1] plaintiff had not

---

[1] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

ORDER - 2

engaged in substantial gainful activity since April 20, 2006, the date of her second application;

(2)   at step two, plaintiff had "severe" impairments consisting of fibromyalgia, osteoarthritis, restless leg syndrome, sleep apnea, obesity, dysthymia, PTSD, and dependent personality disorder;

(3)   at step three, none of plaintiff's impairments met or medically equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings");

(4)   after step three but before step four, plaintiff had the residual functional capacity to perform sedentary exertional work, but with certain additional non-exertional limitations[2];

(5)   at step four, plaintiff was unable to perform her past relevant work; and

(6)   at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 10-24. Plaintiff's request for review was denied by the Appeals Council on July 15, 2009, making the ALJ's decision the Commissioner's final decision. Tr. 1; 20 C.F.R. § 416.1481.

On September 8, 2009, plaintiff filed a complaint in this Court seeking review of the second ALJ's decision. (Dkt. #1). The administrative record was filed with the Court on November 18, 2009. (Dkt. #10). Plaintiff argues the second ALJ's decision should be reversed and remanded to the Commissioner for an award of benefits or, in the alternative, for further administrative proceedings for the following reasons:

(a)   the ALJ failed to properly apply the doctrine of administrative *res judicata*;

(b)   the ALJ failed to properly consider the opinion of Scott Pollock, M.D.;

(c)   the ALJ erred in evaluating the lay witness evidence in the record;

(d)   the ALJ erred in assessing plaintiff's residual functional capacity; and

---

[2] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b). "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

ORDER - 3

(e)     the ALJ erred in finding plaintiff capable of performing other work existing
in significant numbers in the national economy.

The Court agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons

set forth below, hereby finds that while the ALJ's decision should be reversed, this matter should

be remanded to the Commissioner for further administrative proceedings.

<u>DISCUSSION</u>

This Court must uphold the Commissioner's determination that plaintiff is not disabled if

the Commissioner applied the proper legal standard and there is substantial evidence in the

record as a whole to support the decision.  <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir.

1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v.

Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a

preponderance.  <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v.

Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one

rational interpretation, the Court must uphold the Commissioner's decision.  <u>Allen v. Heckler</u>,

749 F.2d 577, 579 (9th Cir. 1984).

I.      <u>The ALJ Erred in Applying a Presumption of Continuing Non-Disability</u>

The Commissioner may apply administrative *res judicata* "to bar reconsideration of a

period with respect to which she has already made a determination, by declining to reopen the

prior application." <u>Lester v. Chater</u>, 81 F.3d 821, 827 (9th Cir. 1996).  "[T]he principle of res

judicata," though, "should not be applied rigidly in administrative proceedings." <u>Vasquez v.

Astrue</u>, 572 F.3d 586, 597 (quoting <u>Lester</u>, 81 F.3d at 827); <u>see also</u> <u>Gregory v. Bowen</u>, 844 F.2d

664, 666 (9th Cir. 1988).

In regard to "the period *subsequent* to a prior determination," furthermore, the authority

ORDER - 4

of the Commissioner to apply administrative *res judicata* "is much more limited." Lester, 81
F.3d at 827 (emphasis in original).  "Normally, an ALJ's prior determination "that a claimant is
not disabled 'creates a presumption that the claimant continued to be able to work after'" the date
of that determination. Vasquez v. Astrue, 572 F.3d 586, 597 (9th Cir. 2009) (quoting Lester, 81
F.3d at 827)).  However, the presumption of continuing non-disability will not apply "if there are
'changed circumstances.'" Lester, 81 F.3d at 827 (quoting Taylor v. Heckler, 765 F.2d 872, 875
(9th Cir. 1985)).

"An increase in the severity of the claimant's impairment would preclude the application
of res judicata." Id. (citing Taylor, 765 F.2d at 875 (noting claimant could overcome presumption
by proving changed circumstances indicating greater disability, but because her condition in that
case had improved rather than deteriorated, she had failed to make requisite showing of changed
circumstances); see also Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988) (to overcome
presumption of continuing non-disability, claimant must prove changed circumstances indicating
greater disability).

A claimant, however, need not show that his or her "condition has worsened to show
changed circumstances." Lester, 81 F.3d at 827.  Rather, as noted by the Ninth Circuit in Lester,
"[o]ther changes suffice." Id.  Thus, "[f]or example, a change in the claimant's age category, as
defined in the [Commissioner's] Medical-Vocational Guidelines [(the "Grids")], constitutes a
changed circumstance that precludes the application of res judicata." Id.  This is "[b]ecause a
change in age status often will be outcome-determinative under the bright-line distinctions drawn
by the" Grids. Chavez, 844 F.2d at 693.

"In addition, the Commissioner may not apply res judicata where the claimant raises a
new issue, such as the existence of an impairment not considered in the previous application."

ORDER - 5

Lester, 81 F.3d at 827; see also Vasquez, 572 F.3d at 597; Gregory, 844 F.2d at 666 (finding that because claimant's application raised new issue of mental impairment, it would be inappropriate to apply res judicata to bar her claim) (citing Taylor, 765 F.2d at 876 (suggesting that res judicata may be improper where claimant has presented new facts to show prior adverse determination may have been incorrect)).  In addition, "all" a claimant "has to do to preclude the application of res judicata is to raise a new issue in the later proceeding." Vasquez, 572 F.3d at 597 n.9.  That is, at least in regard to the existence of a new impairment, there appears to be no requirement that a claimant make a showing of severity in regard thereto. See id.

Lastly, *res judicata* will not be applied "where the claimant was unrepresented by counsel at the time of the prior application." Lester, 81 F.3d at 827-28; Gregory, 844 F.3d at 666 (stating that because claimant was not represented by counsel when her prior application was filed, rigid application of res judicata would be undesireable).  Plaintiff argues the ALJ's application of the presumption of continuing non-disability was improper in this case, because there are changed circumstances.  Specifically, plaintiff asserts she alleged two additional impairments – diabetes and incontinence – in her subsequent application, her age category had changed and she was not represented by counsel at the time of her prior application.  The Court agrees these all constitute changed circumstances precluding the ALJ's presumption here.

First, it is clear plaintiff alleged in her subsequent application for disability benefits, and the second ALJ considered, the issues of diabetes and incontinence, which were not alleged or considered in the prior application. See Tr. 12-13, 48-59.  Defendant argues, however, that not only was plaintiff required to show that her condition changed, but that such change caused her to be disabled.  But defendant misreads the legal precedent in this area.  As the Ninth Circuit has made clear, as discussed above, there is no requirement that a worsening of symptoms be shown.

ORDER - 6

Rather, an issue – or in this case impairment – not raised in the prior application merely must be raised in the subsequent application.  In addition, the requirement that changed circumstances indicate a greater disability appears, as noted above, to apply only to those situations where it is being alleged that there has been an increase in the severity of a prior alleged impairment. See Lester, 81 F.3d at 827; Chavez, 844 F.2d at 693; Taylor, 765 F.2d at 875.

Second, it also is clear that at the time she filed her second application for SSI benefits, plaintiff was in a different age category as contemplated by the Grids.  As plaintiff points out, while she was 43 years old at the time of the prior ALJ's decision, she was 47 years old by the time the second ALJ issued his decision.  As defendant notes, the Commissioner uses the term "younger individual" to "denote an individual age 18 through 49." 20 C.F.R., Pt 404, Subpt. P, App. 2, § 201.00(h)(1).  But the Grids themselves note that "[f]or individuals who are age 45-49, age is a less advantageous factor for making an adjustment to other work than for those who are age 18-44." Id.  The Grids go on to state in relevant part that:

> . . . For individuals who are under age 45, age is a more advantageous factor for making an adjustment to other work.  It is usually not a significant factor in limiting such individuals' ability to make an adjustment to other work, including an adjustment to unskilled sedentary work, even when the individuals are unable to communicate in English or are illiterate in English.

20 C.F.R., Pt. 404, Subpt. P, App. 2, § 201.00(h)(2).  As such, defendant's assertion that no change in age category has occurred here is without merit, at least for purposes of determining whether the ALJ appropriately applied *res judicata* in this case.

Third, again contrary to defendant's assertion, Ninth Circuit case law makes clear that if a claimant is not represented by counsel during the time of his or her prior application, this too is a changed circumstance precluding application of *res judicata*.  In other words, the fact that the Commissioner allows claimants to have non-attorney representatives is irrelevant to the question

ORDER - 7

of whether a changed circumstance has occurred.  Accordingly, for all of the above reasons, the ALJ erred in applying a presumption of continuing non-disability here.

II.      The ALJ Gave Sufficient Reasons for Rejecting the Disability Opinion of Dr. Pollock

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in

ORDER - 8

the record." Id. at 830-31.  However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a non-examining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

In his decision, the ALJ found in relevant part that:

In September 2008, Scott Pollock, M.D., completed a [state agency] form. Dr. Pollock reported that the claimant had PTSD and fibromyalgia.  He stated that the claimant hurt all over and that she could barely function at home.  He stated that the claimant had mental confusion and a cognitive impairment due to her condition.  He stated that the claimant could not leave her home on most days due to pain and exhaustion.  He opined that the claimant could not even do sedentary work (Exhibit B12F).

The undersigned gives little weight to Dr. Pollock's opinion.  First, Dr. Pollock's opinion is based primarily on the claimant's subjective report.  As discussed above, the claimant is not fully credible.  Second, Dr. Pollock's opinion is inconsistent with the overall longitudinal record, which indicates no new or material changes in the claimant's medical condition since the October 2005 decision.  The undersigned notes that Dr. Pollock only examined the

ORDER - 9

claimant once.  On September 9, 2008, Dr. Pollock reported that the claimant had 14 out of 18 positive tender pints and that she had markedly decreased range of motion in the right shoulder in all directions (Exhibit B13F/6). However, on an examination three days later, the claimant had only mild findings in the right shoulder (Exhibit B14F/26).  Finally, while the claimant may have had occasional problems with mental confusion, providers have regularly described the claimant as alert and oriented during examinations and have not noted any overt signs of cognitive dysfunction.

Tr. 21.  Plaintiff argues these are not sufficient reasons for rejecting Dr. Pollock's September 29, 2008 opinion that she could not perform "even sedentary work." Tr. 563.  While not all of the above reasons are valid, the Court finds that overall the ALJ gave specific and legitimate reasons for rejecting that opinion.

It is true as noted by plaintiff that in Ryan v. Commissioner of Social Security, 528 F.3d 1194 (9th Cir. 2008), the Ninth Circuit stated that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the [claimant's] complaints where the [examining physician] does not discredit those complaints and supports his [or her] ultimate opinion with his [or her] own observations." Id. at 1199-1200.  The Ninth Circuit, however, went on to note that there was "nothing in the record to suggest" the examining physician in that case relied on the claimant's own "description of her symptoms . . . more heavily than his own clinical observations." Id. at 1200.  Such is not the case here, where Dr. Pollock did appear to rely quite heavily on plaintiff's subjective reports.

For example, while there are prior progress notes from Dr. Pollock containing objective clinical findings (see Tr. 573, 682), in describing the specific limitations he found in his late September 2008 opinion, Dr. Pollock stated that plaintiff "[f]requently/usually" could "barely function at home," "[m]ost days" could not "go out of [her] home due to pain [and] exhaustion," and "sometimes" forgot her appointments and medications. Tr. 563-64.  There is no mention of actual objective findings in that opinion to support these statements, or reference to such findings

ORDER - 10

elsewhere in Dr. Pollock's treatment notes or the medical records as a whole.  The Ninth Circuit,

furthermore, expressly has held that a physician's opinion that is premised to a large extent on a

claimant's subjective complaints, may be discounted where the record supports the discounting

of the claimant's credibility. See Morgan v. Commissioner of the Social Security Administration,

169 F.3d 595, 601 (9th Cir. 1999); see also Tonapetyan, 242 F.3d at 1149.  As plaintiff has not

challenged the ALJ's adverse credibility determination in this case, the Court finds no error on

the part of the ALJ in making that determination or in rejecting Dr. Pollock's disability opinion

on this basis.

The Ninth Circuit's statement on this issue in Morgan is not inconsistent with its later

statement in Ryan, because in Ryan there was no indication in the record that the physician had

relied more heavily on the claimant's subjective complaints than his own clinical findings.  In

this case, however, the above statements from Dr. Pollock clearly were obtained from plaintiff's

own self-reports.  For example, it is difficult to see how Dr. Pollock could know about plaintiff's

ability to function at home, if that information did not initially come from plaintiff.  Accordingly,

even if Dr. Pollock did rely to some extent on the clinical findings he obtained previously during

the two examinations of plaintiff he performed, the record more strongly points to his reliance on

plaintiff's subjective complaints as the basis for his disability opinion.

The Court agrees the ALJ erred in stating Dr. Pollock only examined plaintiff once, as

the record shows he performed two examinations by the time he issued his disability opinion.

See Tr. 573-74, 681-83.  But, as just discussed, Dr. Pollock relied primarily on plaintiff's self-

reports, rather than on the examination results.  Further, as noted by the ALJ, at least one other

physician who examined plaintiff around the same time, obtained clinical findings that were not

nearly as severe as the marked ones obtained by Dr. Pollock in early September 2008. See Tr.

ORDER - 11

570, 619, 682.  The Court notes as well that Dr. Pollock's marked findings were not found at the second examination he performed, which occurred on the same date he issued his opinion stating that plaintiff was incapable of performing any work. See Tr. 573.

Lastly, the ALJ was not remiss in rejecting any disabling mental limitations set forth in Dr. Pollock's late September opinion, properly noting that none of the other medical sources in the record had produced any clinical evidence of overt cognitive dysfunction indicative of such. See Tr. 211, 215, 218-19, 229, 232, 237-39, 248, 250, 260-63, 281, 285-87, 297-98, 302-06, 310, 322, 327-30, 333-34, 341, 343-45, 366-67, 374, 521-22, 547-48, 551-53, 752.  Accordingly, although not all of the reasons the ALJ gave for rejecting Dr. Pollock's disability opinion were proper, overall he did not err in declining to adopt it.

III.     The ALJ Erred in Evaluating the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains written statements from plaintiff's friend and several members of her family, in which they set forth their observations of plaintiff's symptoms and limitations. See Tr. 180, 182-87.  The ALJ dealt with those statements as follows:

> The undersigned accords little weight to the statements of the claimant's
> family.  First, they are not an objective party.  Second, the medical evidence

ORDER - 12

indicates that the claimant's arthralgias and myalgias are not as chronically severe as each of the claimant's family members are describing. Apart from some occasional right shoulder problems, the claimant has had fairly normal musculoskeletal examinations since October 2005. While she may receive help from others, there is no objective evidence that she cannot perform work within the generous residual functional capacity set forth in the October 2005 decision. While she may receive help from others, there is no objective evidence that she cannot perform work within the generous residual functional capacity set forth in the [prior ALJ's] October 2005 decision.[3] Third, there is no evidence that the claimant's problems with mental fog has materially worsened since the prior decision. As noted above, providers have often described the claimant as alert and oriented during examinations; they have also not noted any signs of overt cognitive dysfunction. Fourth, although the claimant may have some problems with depression, she has not undergone any mental health counseling since the October 2005 decision and has frequently denied any mental symptoms. Fifth, contrary to Ms. [Samira] Zaru's [plaintiff's daughter's] statement that the claimant had significant physical problems working part-time at a bookstore in 2007, progress notes at WorkFirst indicate that the claimant was fired from the job for reasons unrelated to physical or mental issues. Sixth, while the claimant has sleep apnea, it appears well-managed with the help of a CPAP machine. Finally, as noted above, the undersigned finds that the claimant's diabetes and recent gastrointestinal problems are non-severe.

The record also contains a letter from the claimant's friend. In March 2009, Shirley Woolam stated that the claimant had a significant cognitive impairment, and that, beginning in 2006, the claimant began to miss meetings and doctor appointments. She reported that the claimant struggled to perform activities such as cooking and doing the dishes. She stated that the claimant had difficulty using her hands. She did not believe that the claimant could hold down a job because of her physical and mental condition.

For many of the same reasons noted above for the statements of the claimant's family, the undersigned accords little weight to the statements of Ms. Woolam. Specifically, contrary to Ms. Woolam's statements, medical records do not document frequent no-shows to appointments. Also, apart from some occasional right shoulder problems, the claimant has had no significant upper extremities issues since October 2005.

Tr. 20. Plaintiff argues these are not valid reasons for rejecting all of the observations contained in the statements of her friend and family members. The Court agrees.

---

[3] This is essentially the same residual functional capacity with which the second ALJ assessed plaintiff as well. See Tr. 14, 58.

ORDER - 13

First, the Court finds the statement that plaintiff's family members were not "objective" parties to be a highly questionable basis for rejecting their statements.  Family members in a position to observe a claimant's symptoms and daily activities are deemed to be competent to testify as to those symptoms and activities. See Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993).  In Sprague v. Bowen, 812 F.2d 1226 (9th Cir. 1987), the Ninth Circuit indicated that the existence of a "close relationship" between the lay witness and the claimant, and the potential to be "influenced" by the "desire to help," can be viewed as being "germane" to that particular lay witness. Id. at 1232 (citing 20 C.F.R. § 404.1513(e)(2)).  Later, in Greger v. Barnhart, 464 F.3d 968 (9th Cir. 2006), the Court of Appeals again found the ALJ in that case properly considered the close relationship between the claimant and his girlfriend, and the possibility that she might have been influenced by the desire to help him. Id. at 972.

In Bruce v. Astrue, 557 F.3d 1113 (9th Cir. 2009), however, the Ninth Circuit reiterated its position that "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition." Id. at 1116 (quoting Dodrill, at 1918-19).  The Court of Appeals did note its prior holding in Gregor, but nevertheless went on to find the ALJ erred in rejecting the lay witness testimony in Bruce on the basis of that witness's close relationship with the claimant, without explaining this difference in its two rulings. See id. (citing 464 F.3d at 972).

The only explanation the Court can glean from reviewing those rulings is that in Greger there appears to have been at least some evidence (although the Ninth Circuit did not discuss exactly what that evidence was) of the lay witness "possibly" being "influenced by her desire to help" the claimant in addition to the "close relationship" she had with him (464 F.3d at 972), while in Bruce no such evidence existed.  More recently, in Valentine v. Commissioner of Social

ORDER - 14

Security, 574 F.3d 685 (9th Cir. 2009), the Court of Appeals stated that "evidence that a specific spouse exaggerated a claimant's symptoms *in order* to get access to his disability benefits, as opposed to being an 'interested party' in the abstract, might suffice to reject that spouse's testimony." Id. at 694 (emphasis in original).

Here, the ALJ has not pointed to – nor does the Court find – any evidence in the record that plaintiff's family members exaggerated their observations of plaintiff in order to assist her in getting disability benefits, as opposed to merely being "interested parties" in the abstract.  As such, the ALJ erred in rejecting their statements for this reason.  In addition, the ALJ primarily rejected the statements of plaintiff's friend and family members on the basis that the statements were inconsistent with the objective medical evidence in the record.  Plaintiff argues the ALJ erred here because under Bruce, an ALJ may not reject lay witness evidence just because it is not supported by the medical evidence in the record.

It is true that Ninth Circuit held in Bruce that the claimant's wife's testimony in that case could not be discredited "as not supported by medical evidence in the record." Id. at 1116.  In so holding, the Ninth Circuit relied on its prior decision in Smolen v. Chater, 80 F.3d 1273 (9th Cir. 1996), which held that the ALJ improperly rejected the testimony of the claimant's family on the basis that medical records did not corroborate the claimant's symptoms, because in so doing, the ALJ violated the Commissioner's directive "to consider the testimony of lay witnesses where the claimant's alleged symptoms are unsupported by her medical records." Bruce, 557 .3d at 1116 (citing 80 F.3d at 1289) (emphasis in original).  However, the Ninth Circuit did not address two earlier decisions in which it expressly held that "[o]ne reason for which an ALJ my discount lay testimony is that it conflicts with medical evidence." Lewis, 236 F.3d at 511 (citing Vincent v. Heckler, 739 F.2d 1393, 1995 (9th Cir. 1984) (ALJ properly discounted lay testimony that

ORDER - 15

conflicted with available medical evidence)).

Accordingly, while Bruce is the Ninth Circuit's most recent pronouncement on this issue, given that no mention of Lewis and Vincent was made therein, and that neither of the holdings in those two earlier decisions concerning this issue were expressly reversed, it is not entirely clear whether discounting lay witness evidence on the basis that it is not supported by the objective medical evidence in the record is no longer allowed.  Nevertheless, defendant does not challenge plaintiff's reliance on the holding in Bruce here.  The Court, therefore, will adopt it for purposes of this case, and thus find that the ALJ erred in rejecting the statements of plaintiff's friend and family members on this basis.

In addition, the fact that plaintiff may not have undergone any recent counseling for her mental health problems, does not necessarily reflect poorly on the veracity of plaintiff's friend and family members in terms of their own observations of her.  On the other hand, the fact that, as noted by the ALJ, plaintiff herself "frequently denied any mental symptoms" (Tr. 20), clearly does call into question at least those statements concerning such symptoms and limitations they observed resulting from those problems. So too does the fact that it appears, as the ALJ found, that plaintiff's sleep apnea, diabetes and gastrointestinal problems have been well-managed, or in the case of the latter conditions, were non-severe.

The Court also finds the fact that it seems plaintiff may have been fired from her job for reasons other than her impairments and the lack of no shows regarding medical appointments, do call into question the credibility of the lay witnesses with respect to those particular issues.  But, as discussed above, the statements of plaintiff's friend and family members were rejected largely on the basis that they were not objective parties and/or because the observations contained in the statements were inconsistent with the objective medical evidence in the record.  Thus, while the

ORDER - 16

1  Court is not finding that there are not valid reasons supported by the record for rejecting the lay

2  witness statements overall, but that the ALJ did not provide sufficient reasons for doing so here,

3  and, therefore, remand for further consideration of those statements is proper.

4  IV.    The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

5          If a disability determination "cannot be made on the basis of medical factors alone at step

6  three of the evaluation process," the ALJ must identify the claimant's "functional limitations and

7  restrictions" and assess his or her "remaining capacities for work-related activities." Social

8  Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity

9  ("RFC") assessment is used at step four to determine whether he or she can do his or her past

10  relevant work, and at step five to determine whether he or she can do other work. Id.  It thus is

11  what the claimant "can still do despite his or her limitations." Id.

12          A claimant's residual functional capacity is the maximum amount of work the claimant is

13  able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's

14  inability to work must result from his or her "physical or mental impairment(s)." Id.  Thus, the

15  ALJ must consider only those limitations and restrictions "attributable to medically determinable

16  impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the

17  claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be

18  accepted as consistent with the medical or other evidence." Id. at *7.

19          In this case, the ALJ assessed plaintiff with the following residual functional capacity:

20  **. . . the claimant has the residual functional capacity to perform lift and/or carry up to ten pounds occasionally and less than ten pounds frequently and stand and/or walk (with normal breaks) for a total of less than two hours in an eight-hour workday.  The claimant is limited in pushing and/or pulling of hand controls.  She must periodically alternate sitting and standing to relieve pain or discomfort.  She can occasionally climb, balance, and stoop, but never kneel, crunch, or crawl.  She can occasionally reach in all directions, including overhead, handle as in gross**

ORDER - 17

**manipulation, finger as in fine manipulation, and feel.  She should avoid frequent exposure to extreme heat or cold, occasional exposure to wetness, humidity, noise, and fumes, and all exposure to vibration and hazards.  She is moderately limited in her ability to understand, remember, and carry out detailed instructions.  She is moderately limited in her ability to maintain attention and concentration for extended periods.**

Tr. 14 (emphasis in original).  Plaintiff argues, and again the Court agrees, that the ALJ erred in assessing the above residual functional capacity.

Plaintiff first asserts the ALJ's RFC assessment was improper, because it contained no finding concerning both the amount of time she could sit in a regular workday and sit and stand at one time.  As noted above, the ALJ found plaintiff could "**stand and/or walk (with normal breaks) for a total of less than two hours in an eight-hour workday**," and "**must periodically alternate sitting and standing to relieve pain or discomfort**," but did not further clarify how much time she could spend sitting or how often she would have to alternate between sitting and standing. Id. SSR 96-8p provides that the "[e]xertional capacity" of a claimant addresses his or her "limitations and restrictions of physical strength and defines" his or her "remaining abilities to perform each of seven strength demands," among which are included sitting, standing and walking. 1996 WL 374184 *5.

In addition, "[e]ach [such exertional] function must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours'), even if the final RFC assessment will combine activities (e.g., 'walk/stand . . .'). Id.  Although defendant argues there is no requirement that the ALJ express plaintiff's ability to sit and stand, or alternate between the two, in numerical terms, the preceding example provided by the Commissioner in his own ruling strongly indicates otherwise.  That is, it appears the ALJ is required to consider the ability of the claimant to sit, stand and/or walk expressly in terms of the actual number of hours the claimant is

able to do the particular strength function in an eight-hour work day.

As further pointed out by plaintiff, SSR 96-9p provides in relevant part that:

. . . In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals.  If an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded.  The extent of the limitation should be considered in determining whether the individual has the ability to make an adjustment to other work. . . .

. . .

 . . . An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically.  Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded.  The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand.  The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.

1996 WL 374185 *6-*7 (emphasis added).  Accordingly, without knowing how long plaintiff actually is able to sit or to alternate between sitting and standing, it is impossible to know for certain whether she is capable of performing the full range of sedentary work.  As such, the ALJ erred in not setting forth specifically plaintiff's abilities in these areas.

V.      The ALJ Erred in Finding Plaintiff to Be Disabled at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do.  Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids").  Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the

ORDER - 19

1  hypothetical posed by the ALJ. <u>Martinez v. Heckler</u>, 807 F.2d 771, 774 (9th Cir. 1987); <u>Gallant</u>

2  <u>v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore

3  must be reliable in light of the medical evidence to qualify as substantial evidence. <u>Embrey v.</u>

4  <u>Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's

5  disability "must be accurate, detailed, and supported by the medical record." <u>Embrey</u>, 849 F.2d

6  at 422 (citations omitted).  The ALJ, however, may omit from that description those limitations

7  he or she finds do not exist. <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

8

9          In this case, the ALJ found as follows at step five of the sequential disability evaluation

10  process:

11              Based on the testimony of a vocational expert at a March 2005 hearing, [the
12              prior ALJ] concluded in October 2005 that the claimant could perform
              representative sedentary, unskilled jobs, such as call-out operator and
13              surveillance systems monitor, that existed in significant numbers in the
              national economy (Exhibit 1A).  Because the claimant's residual functional
14              capacity has not materially changed since the October 2005 decision, the
              undersigned adopts [the prior judge's] prior finding that the claimant could
15              perform other work in the national economy.

16  Tr. 23.  Plaintiff argues the ALJ erred here, because even if he properly assessed her RFC, it is

17  not clear an individual with that residual functional capacity could perform either of the two jobs

18  the ALJ found plaintiff was capable of performing.  The Court agrees.

19

20          As noted above, in his RFC assessment, the ALJ found plaintiff to be moderately limited

21  in her ability to understand, remember and carry out detailed instructions, and moderately limited

22  in her ability to maintain attention and concentration for extended periods.  In so finding, the

23  ALJ stated he was giving "significant weight" to the opinion of Paul Rethinger, Ph.D., a non-

24  examining physician, who noted moderate difficulties in plaintiff's concentration, persistence

25  and pace and in her ability to understand, remember and carry out detailed instructions, and who

26  opined that she could perform simple routine tasks on a consistent basis. Tr. 22, 547, 551, 553.

ORDER - 20

1   As plaintiff points out, however, a limitation to simple routine tasks is inconsistent with the

2   descriptions of the jobs of call-out operator and surveillance systems monitor contained in the

3   Dictionary of Occupational Titles ("DOT"), both of which require a reasoning Level of 3. See

4   DOT 237.367-014; DOT 379.367-010;

5           The DOT defines Level 3 reasoning as follows:

6
7           Apply commonsense understanding to carry out instructions furnished in
            written, oral, or diagrammatic form. Deal with problems involving several
8           concrete variables in or from standardized situations.

9   DOT, Appendix C.  Also as pointed out by plaintiff, although the Ninth Circuit has not squarely

10  addressed the issue of whether a limitation to simple routine work equates to a specific reasoning

11  Level contained in the DOT, the Tenth Circuit has.  Indeed, in discussing the very same jobs the

12  ALJ found plaintiff could perform in this case, the Tenth Circuit held:

13
            The DOT states that both surveillance-system monitor and call-out operator
14          require a reasoning level of three, defined as the ability to "[a]pply
            commonsense understanding to carry out instructions furnished in written,
15          oral, or diagrammatic form [, and d]eal with problems involving several
            concrete variables in or from standardized situations." DOT, Vol. II at 1011;
16          see id., Vol. I at 281 (categorizing surveillance-system monitor as requiring
            level-three reasoning); id. at 207 (same with regard to call-out operator).
17          Plaintiff argues that her RFC, as found by the ALJ, is incompatible with jobs
            requiring a reasoning level of three. The ALJ's findings with regard to
18          Plaintiff's RFC include: "Mentally, [Plaintiff] retains the attention,
            concentration, persistence and pace levels required for simple and routine
19          work tasks." Aplt. App., Vol. II at 32. This limitation seems inconsistent with
            the demands of level-three reasoning. See Lucy v. Chater, 113 F.3d 905, 909
20          (8th Cir.1997) (rejecting contention that a claimant limited to following only
            simple instructions could engage in the full range of sedentary work because
21          many unskilled jobs in that category require reasoning levels of two or
            higher). We note that level-two reasoning requires the worker to "[a]pply
22          commonsense understanding to carry out detailed but uninvolved written or
            oral instructions [and d]eal with problems involving a few concrete variables
23          in or from standardized situations." DOT, Vol. II at 1011. This level-two
            reasoning appears more consistent with Plaintiff's RFC.
24
25
26  Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005).  The Court agrees with the Tenth

ORDER - 21

Circuit that jobs requiring Level 3 reasoning are incompatible with a restriction to performing only simple, routine work.  As such, the ALJ erred in finding plaintiff was able to perform the jobs of call-out operator and surveillance system monitor.  Accordingly, remanding this matter to the Commissioner is appropriate "to address the apparent conflict between [p]laintiff's inability to perform more than simple [routine] tasks and the level-three reasoning required by the jobs identified as appropriate for her by" the ALJ. Id.

VI.    Remand for Further Administrative Proceedings Is Appropriate

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Because the ALJ erred in applying a presumption of continuing non-disability here, and because

ORDER - 22

issues remain in regard to the lay witness evidence in the record, plaintiff's RFC and her ability to perform other jobs existing in significant numbers in the national economy, it is appropriate to remand this matter to the Commissioner for further administrative proceedings.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff to be not disabled.  Accordingly, the ALJ's decision hereby is REVERSED and REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 13th day of September, 2010.

Karen L. Strombom
United States Magistrate Judge

ORDER - 23